UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JOHN DUPUY, AKA JOHN DUPRY**<br>    La. DOC #184009[1] | **CIVIL ACTION NO. 08-1040** |
| **VS.** | **SECTION P**<br>**JUDGE JAMES** |
| **RIVERBEND DETENTION CENTER, ET AL.** | **MAGISTRATE JUDGE HAYES** |

REPORT AND RECOMMENDATION

Plaintiff John Dupry, an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC) who is incarcerated at the Winn Correctional Center, Winnfield, Louisiana, filed the instant *pro se* civil rights complaint (42 U.S.C. §1983) *in forma pauperis* on July 16, 2008. Plaintiff complains that he was deprived of adequate and appropriate medical care during his two-week confinement at the River Bend Detention Center (RBDC) in East Carroll Parish. He sued RBDC and its insurer, Warden Jones, and an unnamed physician on RBDC's medical staff. He prayed for compensatory and punitive damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED** as frivolous and for failing to state a claim for which relief might be granted.

*Background*

In his original complaint, plaintiff alleged that he is an inmate in the custody of LDOC. He was diagnosed with emphysema and was prescribed "inhalers" – Spiriva hand inhaler,

---

[1] In his original complaint and application for in forma pauperis status [rec. docs. 1 and 2], plaintiff identified himself as John Dupry; in his amended complaint and motion for counsel, he identified himself as John Dupuy. [rec. docs. 5 and 6] The latter is the correct spelling, according the Vinelink prisoner data base. See https://www.vinelink.com/vinelink/searchResultsAction.do

tiotropium bromide inhalation powder, and Advair Diskus 250/50[2] – by a physician at the Earl K. Long Hospital in Baton Rouge in June 2007.[3] Plaintiff claims that he retains only about 20% lung capacity.

On February 6, 2008, he was transferred from the Ascension Parish Jail to the RBDC. According to plaintiff, upon his arrival at RBDC, the prison medical department confiscated the "inhalers" and told plaintiff that this form of medication was too expensive.[4] RBDC staff did not supply an alternative form of treatment. Plaintiff complained to the medical department filing "sick calls" and "medical emergencies" to no avail. He claims that the RBDC physician – identified by plaintiff as "Dr. John Doe," performed a cursory examination but did not provide plaintiff with a breathing treatment or otherwise treat plaintiff's condition during the two week period he was incarcerated at RBDC.

On February 20, 2008 plaintiff was transferred to the East Carroll Detention Center

---

[2] The inhaler – Spiriva – provides a delivery system for the medication tiotropium which is used to prevent wheezing, shortness of breath, and difficulty breathing in patients with chronic obstructive pulmonary disease (COPD, a group of diseases that affect the lungs and airways) such as chronic bronchitis (swelling of the air passages that lead to the lungs) and emphysema (damage to air sacs in the lungs). Tiotropium is in a class of medications called bronchodilators. It works by relaxing and opening the air passages to the lungs to make breathing easier. This product contains tiotropium bromide and is used to treat bronchospasm associated with chronic obstructive pulmonary disease.

See Medline Plus Drugs and Supplements – an online service of the National Institutes of Health and the National Library of Medicine at http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a604018.html#brand-names

The Advair product is a combination of fluticasone and salmeterol and is also used to prevent wheezing, shortness of breath, and breathing difficulties caused by asthma and chronic obstructive pulmonary disease. Fluticasone is in a class of medications called steroids. It works by reducing swelling in the airways. Salmeterol is in a class of medications called long-acting beta-agonists (LABAs). It works by relaxing and opening air passages in the lungs, making it easier to breathe. *Id.* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a699063.html#brand-names

[3] Plaintiff also filed suit in the Shreveport Division of this court alleging similar claims against the staff of the Forcht-Wade Corrections Center in Keithville, Louisiana. Some of the information provided herein was gleaned from the complaint and amended complaint filed in that suit. See *John Dupry v. Forcht Wade Corrections Center, et al.*, No. 5:08-cv-1036.

[4] In his previous suit under Docket Number 5:08-cv-1036, plaintiff alleged that his inhalers were taken from him on March 11, 2008 upon his arrival at Forcht-Wade.

2

(ECDC). Thereafter, on March 11, 2008, he was transferred to Forcht-Wade Corrections Center. Thus, plaintiff was housed at RBDC for a period of two weeks; he was housed at ECDC for a period of less than three weeks.

Plaintiff claims that RBDC Warden Jones is "... liable for the acts and omissions of [RBDC's] employees." He claims that Jones failed to train, instruct and supervise his employees. He claims that he is entitled to damages because he was totally deprived of the medically prescribed breathing devices; that he was exposed to more danger and harm; that he was denied medical care and treatment; that he suffered and will continue to suffer emotional and mental pain as well as injury to his lungs. He concludes that the incident in question was caused by the negligence (or strict liability) of the defendants because they provided negligent medical care; they failed to do what they should have done; they failed to assist plaintiff in any way; and, they committed other acts of negligence.

On October 2, 2008, the undersigned directed plaintiff to amend his complaint to provide additional information. [rec. doc. 4][5] On October 21, 2008 he submitted his amended complaint

---

[5] Among other things, the undersigned observed that plaintiff should provide: "... the name(s) of each person who allegedly violated plaintiff's constitutional rights ... and ... a description of the alleged injury sustained as a result of the alleged violation."

He was also advised that his suit against RBDC was subject to dismissal since the facility did not appear to be a juridical person and thus not amenable to suit under Louisiana or federal law.

The undersigned also observed, "Plaintiff claims that he was denied treatment while he was incarcerated at the RBDC during the period from February 6 – 20, 2008. He claims that his 'inhalers' were taken from him on February 6, however, he also claims that his inhalers were taken from him on March 11 when he entered into custody at Forcht-Wade. See *Duprey v. Forcht -Wade Corrections Center, et al.*, Civil Action No. 5:08-cv-1036. It thus appears that his inhalers were returned to him at some time between February 6 and March 11. Plaintiff should explain this discrepancy. Further, plaintiff should provide a detailed description of the injury he sustained as a result of the alleged denial of medical care."

Finally, plaintiff was informed that his suit against the supervisory officials was subject to dismissal unless he alleged personal involvement or policy implementation on their parts, and, he was instructed to amend his complaint to include such allegations. [rec. doc. 4]

[rec. doc. 5] and a Motion requesting appointment of counsel. [rec. doc. 6]

In the amended complaint, plaintiff alleged that his inhalers were taken by Nurses Progee and Spence who advised plaintiff that the devices "... cost too much money." [rec. doc. 5, ¶ 2] He also alleged that the unknown physician (Dr. John Doe) "... had a private practice down the street from [RBDC] that inmates had to go to cause they did not have a doctor on hand at the facility..." [rec. doc. 5, ¶3] Plaintiff alleged that the RBDC staff brought him to the physician "... for his 'severe' emphysema lung disease and the doctor did nothing not even give a x-ray for plaintiff, only sent him back to the facility..." He also alleged that the physician, " ... knew and was aware of the steroid inhalers ... because of his intake medical records..." [rec. doc. 5, ¶4] Plaintiff confirmed that he was supplied a non-steroidal inhaler upon his arrival at ECDC on February 20, 2008. [rec. doc. 5, ¶7] Finally, with regard to the injury sustained plaintiff alleged, "Plaintiff has sustained more damage to his decayed lungs with less than 20% usage, 80% is now deteriorated and can't be refixed. Emotional and mental pain and suffering that comes with the fact that prison officials tryed [sic] to kill him comitting [sic] attempted 1st degree murder..." [rec. doc. 5, ¶9]

## Law and Analysis

### 1. Appointment of Counsel [rec. doc. 6]

On October 21, 2008, plaintiff filed a motion to appoint counsel alleging as grounds, the inadequacy of the WCC law library program, and, plaintiff's illness.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28

4

U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint and an amended complaint setting

5

forth his cause of action against the named defendants. In addition, he has filed complaints in two other cases pending in this jurisdiction. [See 5:08-cv-1036; 1:08-cv-1150]

No special legal knowledge is required of plaintiff herein; he has been instructed on the applicable law and directed to provide the FACTUAL basis for his complaint. [rec. doc. 4] Indeed, plaintiff, and no one else, has first hand knowledge of the facts which form the basis of this action. The claim is not necessarily atypical of those often asserted in civil rights litigation and is not complex. Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

## 2. *Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven

6

consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff has set forth specific facts which he claims entitles him to relief. Nevertheless, on initial review, the undersigned noted certain specific deficiencies, alerted plaintiff to those deficiencies, and directed him to amend his complaint to cure those deficiencies. Plaintiff, however, apparently chose to disregard the amend

7

order. He need not be afforded further opportunities to amend.

## 3. Juridical Person

Plaintiff has named RBDC as a defendant. Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether this entity has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. According to a search of the Louisiana Secretary of State's Corporation Database, the RBDC is not such an entity.[6]

Since neither RBDC does not qualify as a juridical person, plaintiff's complaint against the facility must be dismissed as frivolous.

## 4. Section 1997e

In his original complaint, plaintiff claims that the defendants' actions "caused plaintiff ongoing injury to his lungs." [rec. doc. 1, p. 6, ¶13(f)] He also claimed that he was entitled to damages for past, present and future emotional and mental pain. [rec. doc. 1, p. 6, ¶13(d) and (3)] Since he did not otherwise describe the nature and extent of his injury, he was directed to amend his complaint to "... provide a detailed description of the injury he sustained as a result of the alleged denial of medical care." [rec. doc. 4] In response to that directive, plaintiff alleged that he "... has sustained more damage to his decayed lungs ..." He also claimed that he was entitled to damages for the "... emotional and mental pain and suffering that comes with the fact that prison officials [tried] to kill him..." [rec. doc. 5, ¶9]

---

[6] See http://www400.sos.louisiana.gov/app1/paygate/crpinq.jsp

Title 42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the current version of the statute, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997)

Other than the conclusory allegation that "... has sustained more damage to his decayed lungs ..." plaintiff has alleged no physical injury resulting from his two week stay at RBDC.[7] Since he has alleged no physical injury resulting from the actions of the defendants, his claim for monetary damages as compensation for pain and suffering is legally without merit and subject to dismissal as frivolous.

### 5. *Punitive Damages and Deliberate Indifference*

Plaintiff's failure to allege physical injury does not end the inquiry, however, since he has also claimed that he is entitled to punitive damages. Section 1997e does not bar a prisoner's right to recover punitive damages for constitutional violations. *Hutchins v. McDaniels*, 512 F.3d 193, 196-98 (5th Cir.2007). However, "... punitive damages may be awarded only when the defendant's conduct 'is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights. The latter standard requires 'recklessness in its subjective form,' i.e. 'a 'subjective consciousness' of a risk of injury or illegality and a 'criminal

---

[7] In this suit, plaintiff has always maintained that he had less than 20% usage of his lungs as a result of his medical condition. He has made that same allegation in his subsequent suits. See 5:08-cv-1036 at rec. doc. 1, and 1:08-cv-1150 at rec. doc. 1. Based upon these allegations, it does not appear that plaintiff's condition deteriorated during his stay at RBDC and therefore the undersigned concludes that his original and amended complaints do not establish that he suffered any specific physical injury as a result of the complained of actions of the defendants.

9

indifference to civil obligations.'" *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003), quoting, *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir.1994) and *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

Plaintiff has not alleged facts sufficient to establish that the defendants were motivated by evil intent or reckless or callous indifference. To the contrary, in his original complaint, plaintiff claimed that the "... incident was caused ... by <u>negligence and strict liability</u> of the defendants..." He complained that they provided "<u>negligent medical care and treatment</u>;" that they failed "to do what they should have done;" failed "to assist John Dupry [sic] in any manner whatsoever" and "<u>other acts of negligence</u>..." [rec. doc. 1, ¶14] In his amended complaint he alleged that his inhalers were confiscated "... because of cost and evil motive..." [rec. doc. 5, ¶10], however, he did not provide factual support for this contradictory and conclusory allegation.

Plaintiff's pleadings do not establish "deliberate indifference." Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the actions of the defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in this means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d

752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Further, the mere fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

The facts alleged indicate that plaintiff was incarcerated at RBDC for only 14 days. During that period of time, he was examined by a physician who apparently believed that the steroidal inhalers were not necessary. Plaintiff, of course, disagrees with that diagnosis. While plaintiff claims that the physician and others at RBDC "should have known" that the treatment was necessary, that allegation is, as shown above, insufficient to visit §1983 liability on the defendants.

Plaintiff's pleadings – accepted as true for the purposes of this screening Report – do not establish deliberate indifference, reckless indifference, or callous indifference, and therefore his claim for punitive damages must likewise fail.

### *6. Conclusion*

Therefore, for the foregoing reasons,

Plaintiff's Motion for Appointment of Counsel [rec. doc. 6] is **DENIED;** and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted

pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, December 10, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE